**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JORGE VILA, et al., | * | |
| Plaintiffs, | * | |
| | | Civil Action No. 8:25-cv-01021-PX |
| v. | * | |
| IRAQ MIDDLE MARKET | | |
| DEVELOPMENT FOUNDATION, et al., | * | |
| Defendants. | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

Pending are the motions to dismiss the Amended Complaint filed by Defendants Abhishek Bhasin, Dennis Flannery, Myrta K. Sale, and Iraq Middle Market Development Foundation ("IMMDF"), ECF No. 22, and Global Communities ("Global") and Carrie Hessler Radelet ("Hessler"), ECF No. 31. The motions are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motions to dismiss are GRANTED.

**I.      Background**

The Court accepts the Amended Complaint facts as true and most favorably to Plaintiffs, Jorge R. Vila ("Vila") and Dolavon GB Ltd ("Dolavon"). *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Global is a nonprofit corporation funded by the United States Government to manage international humanitarian projects. ECF No. 18 ¶ 8. Hessler serves as Global's CEO. *Id*. ¶ 9. Over twenty years ago, Global formed IMMDF to help finance private-sector economic-growth projects in Iraq. *Id*. ¶ 11. Although the exact corporate relationship between Global and IMMDF is unclear, the IMMDF Board "always included senior managers of Global." *Id.* ¶ 12. Defendants Abhishek Bhasin ("Bhasin"), Dennis Flannery ("Flannery"), and

Myrta K. Sale ("Sale") served on the IMMDF Board of Directors, with Sale as its Chair.  *Id.* ¶ 5–7.

On December 1, 2009, Vila became IMMDF's General Manager.  ECF No. 18 ¶ 31.  Vila, through Bell Bridge, UK Ltd. ("Bell Bridge"), executed a Management Agreement with IMMDF memorializing the terms of his employment.[1]  ECF No. 23-2 at 2.  Under the Management Agreement, Vila was responsible for handling IMMDF's daily operations and addressing "all issues related to those resources and activities to achieve IMMDF's objectives."  ECF No. 23-2 at 2.  Vila's duties also included managing IMMDF's loan portfolio, monitoring the performance and compliance of IMMDF's borrowers and related litigation, and performing an array of windup services once IMMDF had fully distributed its loans.  *Id.*  The Management Agreement was twice extended, and, in October 2022, Bell Bridge was replaced with Dolavon.  ECF No. 23-2 at 1, 9–10.

At various times during Vila's tenure, he would warn the IMMDF Board and Global when IMMDF was in jeopardy of violating Iraqi law.  For example, from 2005 to 2009, and in connection with 35 loans extended in Kurdistan, Vila warned that the interest rates IMMDF was charging on the loans was above the 7.0% cap established by Iraqi law.  ECF No. 18 ¶ 33.  Several years later, in September 2023, a third party filed criminal charges against IMMDF and Vila arising from these high interest rates.  *Id*. ¶¶ 38–39.  As best Vila understands, the criminal charges remain open.  *Id.* ¶ 40.  The Amended Complaint also pleads several related civil suits that commenced between

---

[1] The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'"  *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

2021 and 2023, but it fails to explain how these suits tie to the criminal charges, or to the Amended Complaint allegations in this suit.  *Id.* ¶ 43–44.

Following the criminal charges in 2023, the IMMDF Board began to discuss dissolving IMMDF.  The Amended Complaint avers that this dissolution was done "with reckless disregard of United States and Federal law, and Iraq and Jordan law," but fails to elaborate on why such dissolution was supposedly wrongful.  ECF No. 18 ¶ 45.  At a strategy meeting held in December 2023, Vila informed the Board that "under US *[sic]*, Iraq and Jordan laws, IMMDF, including its foreign branches, could not be dissolved while there were outstanding court claims against them." *Id*. ¶ 48.  Vila also articulated certain negative tax consequences that could flow from premature dissolution.  *Id.* ¶ 49.

Nonetheless, the Board pressed forward.  In April 2024, the Board engaged the services of "K&A" a nonspecific "firm"[2] and the law firm of Baker and Botts to prepare a dissolution plan, over Vila's objections and despite his insistence that dissolution would be illegal.  ECF No. 18 ¶¶ 48, 50, 53.  That same month, IMMDF's Board Chair, Sale, informed Global CEO Hessler that the Board elected to dissolve IMMDF, and Hessler agreed.  *Id*. ¶ 67–68.

In June 2024, Vila learned the particulars of the dissolution plan and "expressed his profound alarm" arising from unidentified "institutional and personal liability."  ECF No. 18 ¶ 54. Vila also contends that the Board improperly approved the dissolution plan with only two remaining Board members once Bhasin resigned, in contravention of the Board Bylaws.  *Id*. ¶¶ 56, 61.

With the dissolution plan proceeding apace, Sale directed Vila to pay two invoices to K&A between July 20 and August 2, 2024, for services related to the dissolution.  ECF No. 18 ¶ 78.

---

[2] Although nowhere does the Amended Complaint define K&A or give its full corporate name, evidently IMMDF is "domiciled at K&A's address in Washington, D.C."  ECF No. 18 ¶ 31.

Vila refused because he had not authorized the expense as General Manager, did not sign a letter of engagement, and remained concerned that the dissolution plan would violate foreign law. *Id*. ¶¶ 79–80. The Board, in turn, told Vila to pay the invoices or be fired, so Vila resigned. *Id.* ¶¶ 82–83.

Thereafter, on December 23, 2024, Vila filed this lawsuit against IMMDF, and IMMDF Board members, Sale, Flannery, and Bhasin ("the IMMDF Defendants") in the United States District Court for the District of Columbia. ECF No. 1. On March 28, 2025, the District of Columbia Court granted the IMMDF Defendants' unopposed motion to transfer the case to this Court. ECF No. 6. The IMMDF Defendants next moved to dismiss the Complaint, ECF No. 9, to which Vila sought an extension to respond and next filed the Amended Complaint. ECF Nos. 11 & 18. The Amended Complaint eliminated certain causes of action but added Global and Hessler as defendants and Dolavon as plaintiffs.

The Amended Complaint asserts four claims: "constructive breach of contract" against IMMDF and Global (Counts I and II); "tortious interference with contract" against Global only (Count III); and "civil conspiracy to tortiously interfere with the contract and prospective business expectations" against IMMDF Board Chair Sale, Board members Flannery and Bahsin, and Global CEO Hessler (Count IV). ECF No. 18 at ¶¶ 92–93, 95, 97–98, 100. Defendants now urge the Court to dismiss all claims. ECF Nos. 22 & 31.

## II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007). The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141,

145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

With this standard in mind, the Court turns to Defendants' arguments.[3]

## III.    Analysis

### A.    Failure to Comply with Federal Rule of Civil Procedure 8(a)

Defendants first collectively argue the Amended Complaint should be dismissed for failing to include a short and plain statement showing how the Plaintiffs are entitled to relief, as required

---

[3] The IMMDF Defendants urge the Court to consider the original Complaint as the operative pleading, because the Amended Complaint was filed without leave of Court, in violation of Federal Rule of Civil Procedure 15(a). ECF No. 23 at 8–9. However, the Court granted Vila additional time to respond to IMMDF's motion to dismiss the original Complaint. ECF Nos. 11 & 12. And within the enlarged time, Vila filed the Amended Complaint. ECF No. 18. Accordingly, the Court will read this Amended Complaint as filed within the time frame permitted by the extension. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.") (internal quotation marks and citation omitted). The Court will also deny the motion to dismiss the original Complaint, at ECF No. 8, as moot. *See, e.g., Johnson v. Asset Acceptance, LLC,* No. GLR-15-538, 2015 WL 8760737, at *1 (D. Md. Dec. 15, 2015). However, the proposed "second amended complaint" which Plaintiffs belatedly urge the Court to permit, is a different matter. *See* ECF No. 29-1, 33-1, & 33-2. Plaintiffs did not timely seek leave to amend, and so, the Court looks solely to the Amended Complaint at ECF No. 18 as the operative pleading. Nonetheless, where appropriate, the Court addresses *infra* why the proposed second amended complaint does not cure the identified pleading deficiencies in any event.

under Rule 8(a).  ECF No. 23 at 10–11.  *See* Fed. R. Civ. P. 8(a).  Defendants are correct that Rule 8(a) is designed to ensure that a defendant receives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  *See also* Fed. R. Civ. P. 10 (requiring a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").    That said, while the Amended Complaint is hardly a model of clarity, Defendants understood the claims well enough to challenge each on sufficiency grounds.  Because this Court must, when it can, reach the merits of the claims, *see Laber,* 438 F.3d at 426, it will not dismiss on this basis.

The Court next addresses each claim separately.

**B.    Constructive Breach of Contract (Counts I and II)**

Defendants argue that in Maryland, "constructive breach" of contract is not a recognized cause of action.  ECF No. 23 at 15; ECF No. 32 at 11.  Plaintiffs agree.  ECF No. 29 at 7.  Thus, the claims must be dismissed.

Plaintiffs nonetheless urge the Court to consider the proposed second amended complaint attached to their response in which they convert the "constructive breach" claims into breach of contract and constructive discharge claims.  ECF No. 29 at 7–8; ECF No. 33 at 9–10.  Notably, the proposed second amended complaint adds no new facts supporting these or any other allegations.  *Compare* ECF No. 18 *to* ECF No. 33-2.  Rather, the proposed amended pleading essentially changes the title of Counts I and II to "Breach of Contract/Constructive Discharge." ECF No. 33-2 at 31.  While a party may not cure a pleading defect in responsive briefs, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 184 (4th Cir. 2013), the proposed amendments make no difference.

For breach of contract, "a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010) (citation omitted). Nonetheless, the plaintiff must aver with "'certainty and definiteness'" some facts that reflect the "'contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)). Under Maryland law, "[a] constructive discharge occurs . . . when an employer deliberately causes or allows the employee's working conditions to become so intolerable that the employee is forced into an involuntary resignation." *Rosero v. Johnson, Mirmiran & Thompson, Inc.*, No. GLR-21-588, 2022 WL 899442, at *7 (D. Md. Mar. 28, 2022), *aff'd*, No. 23-2041, 2024 WL 773586 (4th Cir. Feb. 26, 2024) (quoting *Jackson v. Clark*, 564 F. Supp. 2d 483, 492 (D. Md. 2008)).

When viewing the proposed second amended complaint most favorably to the Plaintiffs, the pleading says no more than Defendants "breached" the contract by "forcing Vila's resignation" and "thereby constructively discharge *[sic]* Vila." ECF No. 33-2 at 31. Nothing makes clear what provision or provisions of the Management Agreement were breached, how Defendants breached them, or what intolerable working conditions, if any, existed. Merely because IMMDF pursued dissolution for the better part of a year with Vila's knowledge and over his objection alone does not make plausible either of the proposed amended claims.[4] Accordingly, even if the Court considered the second amended complaint, dismissal is proper.

### C.    Tortious Interference with Contract against Global (Count III)

---

[4] In fact, the Management Agreement allows the parties to end their employment relationship early upon the "anticipated dissolution due to bankruptcy of IMMDF, or by an event of force majeure," so long as IMMDF gives Plaintiffs six months' prior written notice. ECF No. 23-2 at 4. When viewing the alleged facts most favorably to Plaintiffs, Vila had more than six months' notice of IMMDF's dissolution. ECF Nos. 33-2 ¶¶ 48, 71. Perhaps this is why Plaintiffs do not allege a breach of any particular provision or provisions of the Management Agreement.

Global contends that the tortious interference claim fails because no facts make plausible that it committed the necessary "intentional or willful act" with the purpose of interfering with the Management Agreement or disrupting Plaintiffs' business expectations. ECF No. 32 at 15. For a tortious interference with contract claim to survive challenge, some facts must make plausible: "(1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional interference with that contract; (4) hindrance to the performance of the contract; and (5) resulting damages to the plaintiff." *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 517 (D. Md. 2023) (citation omitted). A tortious interference claim requires "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 45 (D. Md. 2024) (*quoting Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 629 (2003)). Importantly, whether a defendant's conduct amounts to tortious interference "depends in large measure on whether [its] purpose or motive . . . is to interfere." *Kaser*, 376 Md. at 634 (citation omitted).

When viewing the Amended Complaint's facts most favorably to the Plaintiffs, nothing makes plausible that Global interfered with the Management Agreement. Global's mere "consent" to dissolve IMMDF alone does not give rise to the inference that Global did so with the purpose of inducing IMMDF to breach the Management Agreement. ECF No. 18 ¶¶ 68–69. Global was the nonprofit affiliate of IMMDF who could have just as plausibly agreed to dissolution for legitimate business reasons as it could to end the contract with Plaintiffs. *See* ECF No. 32 at 16. *See also* ECF No. 18 ¶¶ 8, 15. Stated plainly, it stretches reason to argue that Global agreed to dissolution for the purpose of ousting Vila as General Manager. *See* ECF No. 18 ¶ 68 (Global Communities stated "dissolving [IMMDF] now was 'the right decision'" after "try[ing] to continue

IMMDF as long as possible."). Because the claim fails on this basis alone, Count III must be dismissed. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 354 (4th Cir. 2013) (affirming dismissal of a tortious interference claim, because the plaintiff's allegations "regarding how the defendants intentionally interfered with this contract fail to state a claim that is facially plausible").

> **D.    Civil Conspiracy to Tortiously Interfere with Contract and Prospective Business Against Sale, Flannery, Bhasin and Hessler (Count IV)**

IMMDF Board members Sale, Flannery, and Bhasin argue that they cannot be liable for conspiring with each other or Hessler, as the claim is barred by the intracorporate conspiracy doctrine. ECF No. 23 at 17–18. The intracorporate conspiracy doctrine stands for the proposition that because a corporation, its agents, and employees are essentially one entity, they cannot conspire with each other, and so conspiracy "is a legal impossibility." *Tffi Corp. v. Williams*, No. DKC-13-1809, 2016 WL 470865, at *8 (D. Md. Feb. 8, 2016) (quotations and citation omitted). *See also Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir.1985). From this, Sale, Flannery and Bhasin contend they cannot be liable for conspiracy as they all were agents of IMMDF.

The problem for these Defendants, however, is that the Amended Complaint avers a conspiracy between them and Global's CEO, Hessler. No. 18 ¶¶ 5–7, 9. While Sale, Flannery, and Bhasin are plausibly agents of IMMDF, Hessler maintains a separate relationship with Global. *Id*. Thus, when viewed most favorably to the Plaintiffs, the Court cannot conclude that the intracorporate conspiracy doctrine defeats the claim.

That said, the count fails for a different reason. "Conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *ClearOne Advantage, LLC,* 756 F. Supp. 3d at 46 (internal quotation omitted). Rather, the claim is cast more appropriately "in the nature of an aggravating factor with respect to the underlying tortious conduct." *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir.

2014) (internal quotation omitted).  Thus, for the conspiracy count to remain, the underlying tort for which Defendants are said to have conspired—here tortious interference with a contract—must also remain.  *See Edwards v. Am. Med. Ass'n, Inc.*, No. 23-2026, 2025 WL 444424 at *6 (4th Cir. Feb. 10, 2025) (affirming dismissal of a civil conspiracy claim because the plaintiff's failed to allege an underlying tort); *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1047 (Md. 1995) (same).  But for reasons discussed, the tortious interference count does not survive challenge, and so, the conspiracy allegation, too, must fail.

Once again, Plaintiffs agree, but separately argue that the proposed second amended complaint cures the pleading defects for the tortious interference claim.  ECF No. 29 at 8–9; ECF No. 33 at 12.  The Court disagrees.  *Compare* ECF No. 18 *with* ECF No. 33-2.  The proposed amended pleading merely adds Hessler as an individual defendant to a count for tortious interference with contract and prospective business advantage, but it adds no *facts* to make plausible that any of the Defendants intentionally endorsed IMMDF's dissolution with the purpose of interfering with the Management Agreement.  Merely averring that Defendants had "orchestrate[d] the circumstances" that would "constructively discharge Vila" amounts to naked legal conclusions couched as facts that alone do not make plausible the claim.  ECF No. 33-2 at ¶ 100.  *See Iqbal*, 556 U.S. at 686.  Thus, because the tortious interference count in the proposed second amended complaint still fails as a matter of law, so does the companion conspiracy claim. The conspiracy count is dismissed.[5]

## IV.    **Dismissal With or Without Prejudice**

Defendants collectively urge the Court to dismiss the claims with prejudice.  *See* ECF No.

---

[5] Hessler separately argues that no facts make plausible any "agreement" with the named IMMDF Board members sufficient to sustain the claim.  ECF No. 32 at 17.  The Court need not reach this argument because the conspiracy count cannot proceed as a standalone cause of action.

23 at 20; ECF No. 32 at 19.  While the Court retains wide discretion in this regard, *see Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013), dismissal with prejudice is amply justified where, as here, the plaintiffs have been given several opportunities to cure the pleading deficiencies.  *See Glover v. Loan Science, LLC*, Civ. No. 8:19-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)).  This is especially so because the Court has accepted the Amended Complaint as the operative pleading and separately considered whether the proposed second amended complaint would cure the identified pleading defects.  Yet even after three attempts to plead legally sufficient causes of action, the claims still fail.  Thus, the Court shall dismiss the claims with prejudice.

## V.    Conclusion

For the foregoing reasons, the Court grants the motions to dismiss, ECF Nos. 22 & 31.  The claims are dismissed with prejudice.

A separate Order follows.


March 6, 2026                              /s/
Date                                PAULA XINIS
                                    United States District Judge